## Elicia D. Wahl, Appellee, v. John F. Brady, Appellant.

## Gen. No. 17,039.

1. GUARANTY—*discharge of guarantor.* Where machinery held under a chattel mortgage as security for a note is sold for more than the amount of the note at a public auction to the husband of the person holding the note, and where upon such sale being adjudged rescinded because of failure to comply with its terms, the machinery is again sold at public auction for a sum less than that due on the note, action may be brought against the guarantor of the note to recover the balance due thereon where it appears that such guarantor was not misled by the first sale, and knew that the purchaser would not be able to comply with the terms thereof.

2. CHATTEL MORTGAGES—*rescission of sale.* Whether or not a sale at public auction under a chattel mortgage has been rescinded for failure to comply with the terms of such sale is a question for the jury.

Appeal from the Circuit Court of Cook county; the Hon. EDWARD M. MANGAN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed. Opinion filed October 3, 1912.

DELAVAN B. COLE, for appellant.

ALEXANDER H. WEYMAN, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This was an action in *assumpsit* brought by appellee, as endorsee of a judgment note, against appellant as guarantor, which note was for $4,000, dated August 17, 1904, signed by John F. Brady Turbine Company, a corporation, payable on or before eighteen months after date to the order of Jacob C. Wahl (the husband of appellee) and by him endorsed to appellee. Before the delivery of said note by the maker to the payee, appellant placed his name upon the back of said note. A trial was had in the Circuit Court of Cook county before a jury, resulting in a verdict in favor of appellee

for $2,615.50, upon which verdict judgment was entered on March 19, 1910. Appellant seeks by this appeal to reverse that judgment.

The facts of the case are substantially as follows: On the day of the date of said note, the Turbine Company, being in need of funds, negotiated a loan to it of money through said Jacob C. Wahl, in consideration of said note and in the further consideration that appellant (who was president of said Company) would sign the same as guarantor. As further security for the payment of said note, the Turbine Company executed to said Jacob C. Wahl a chattel mortgage on certain machinery owned by it and in its possession at its place of business in Chicago. While the note and chattel mortgage were made to said Jacob C. Wahl, appellee, his wife, in fact made the loan, and Wahl endorsed the note and assigned the mortgage to her. Before the maturity of the note various payments for interest were made, and when the note became due appellant requested an extension of time, which request was apparently granted as nothing appears to have been done until June 19, 1908, when appellee placed her husband in charge of the mortgaged property as custodian. At this time said property was on the premises occupied by the Turbine Company and said husband was there working for appellant. Appellee notified the Company and appellant in writing that on June 30, 1908, at 2 o'clock in the afternoon, at said premises, she would sell the mortgaged property at public auction to the highest and best bidder *for cash*. At the time and place mentioned in the notice there were present A. H. Heyman, the agent and the attorney at law for appellee, said Jacob C. Wahl, appellant, W. P. Dunne, another officer of said Turbine Company and several other persons. Heyman acted as auctioneer and announced that the terms of sale were ''five per cent. cash and balance in three days.'' Before any bids were made, said Dunne, as such officer, read aloud

to the persons present a notice to the effect that the chattel mortgage was null and void and that any purchaser of the mortgaged property at the sale would not get a valid title thereto but would become involved in litigation. The only bidders were appellant and said Jacob C. Wahl. The first bid for the property was made by Wahl at $2,500, this was raised by appellant to $3,000, and, after various alternating higher bids by said parties, the auctioneer announced that the property had been sold to said Wahl for $4,254, which appears to have been more than the total amount then due on said note. It also appears from the evidence that the appellant wanted the property because he knew its value better than anyone else and because he had at that time made certain connections in Cleveland, and it does not appear that said Wahl was familiar with its value or had any use for the property. Neither of the two bidders was prepared to comply with the terms of sale either as stated in the notice of the sale or as announced by the auctioneer. Appellant testified, "I didn't have the cash. * * * I was going to give my note for it if it was bid off to me." Appellant's last bid for the property was $4,250, and he testified, "I wanted it at that money, $4,250." Wahl testified that he had no money at the time and so informed appellant, and that appellant "wanted me to bid the machinery in for him, as he wanted to form a new company and wanted the machinery." Appellant denied that he requested Wahl to bid in the property for him.

It further appears from the evidence that after June 30, 1908, the said machinery remained on the premises of the Turbine Company, in the same physical condition as it was when said mortgage was executed in August, 1904, until January 5, 1909, except that shortly after said June 30, 1908, Jacob C. Wahl put certain tags on the numerous pieces of machinery at the request of appellant and also put a lock on the door of the room wherein said machinery was located, to which

lock both he and appellant had a key.  It was not shown that appellee ever had notice of these acts.  She never received from anyone any money or property on account of said transactions of June 30, 1908.  Shortly thereafter the Turbine Company was adjudged a bankrupt and a receiver in bankruptcy took possession of all of its property including said mortgaged machinery —maintaining such possession through custodians until the latter part of December, 1908.  Appellee appeared in the bankruptcy court and claimed the property described in the chattel mortgage and she was finally adjudged by said court entitled to the same. It does not appear that during the course of these proceedings either her husband or appellant claimed any title to the mortgaged property, or by any actions disputed her title thereto, and appellant testified he was a witness before the referee in bankruptcy and testified as to said mortgage and as to the possession of the property thereunder.

On January 5, 1909, appellee after advertisement sold at public auction, through one Winternitz, an auctioneer, all of said mortgaged property.  This sale was held on the premises of the Turbine Company and the property was sold for cash under the power contained in the mortgage.  After deducting the expenses of the sale (consisting of auctioneer's fees, advertising, rent, custodian's fees, etc., and $350 for attorney's fees in reclaiming the chattels from the receiver of said bankruptcy court) appellee realized $2,138.15, leaving a balance then due on the note of $2,231.13.  To this sum at the trial was added interest from said date to the day of the trial, together with the sum of $200 for attorney's fees, provided for in the note, which made up the amount of the verdict of the jury.  Before this suit was started, appellee caused a judgment by confession to be entered on the note against the principal maker, the Turbine Company, and the fact of the entry of such judgment was admitted upon the trial.

A report of said sale of January 5, 1909, showing the various pieces of machinery sold, the amount received for each, the names of the purchasers, and containing an itemized statement of all expenses, was given by appellee to both the Turbine Company and appellant. Appellant was present at this sale and had an opportunity to make bids but did not do so. And it does not appear that he made any protest against the sale, or any objection to the application of the proceeds therefrom by appellee.

It is first contended by counsel for appellant that the transaction of June 30, 1908, was a completed sale, and that appellant was entitled to have credited on said note the amount bid by Jacob C. Wahl, $4,254, less expenses, which, if done, would have fully satisfied the indebtedness evidenced by said note. Counsel argues that while it is true that, as between vendor and vendee, the vendor may reclaim property sold at auction if payment is not made according to the terms of the sale, (Canadian Bank v. McCrea, 106 Ill. 281; Gibson v. Chicago Packing & Provision Co., 108 Ill. App. 100) still as to a third person, such as appellant, the sale is complete when the purchaser is placed in possession whether payment has been made or not. In support of his argument counsel cites a number of cases holding in effect that where a vendor sells and delivers goods to another under circumstances which would authorize him to rescind the sale as against the vendee, if before its rescission the vendee sells or pledges such goods to an innocent third party, such party will be allowed to hold them as against the vendor, and by reason of the application of the familiar rule that where one of two innocent persons must suffer from the fraud of a third, the loss should fall on him who, by his imprudence, enabled such third person to commit the fraud. But in this case before us appellant is not such an innocent third party, nor do such or similar circumstances appear. Appellant was not misled by the transactions of

June 30, 1908. He parted with no money, nor did he surrender any rights of which he was possessed. He was present at the time and was cognizant of all the facts. He knew that neither he nor Jacob C. Wahl could comply with the terms of the sale, and, if Wahl's testimony be true, he knew that Wahl never expected to comply with the terms of the sale unless he (appellant) furnished Wahl with the money to do so. Furthermore, his subsequent actions are such as tend to the conclusion that he knew that, if any sale was in fact made on said date, the same had been rescinded and the title to the machinery still remained in appellee and that he acquiesced in that situation. We are of the opinion that the questions, whether or not it was the intention of the parties that the title to the machinery should pass to Jacob C. Wahl without payment being made in accordance with the terms announced, and whether or not the alleged sale of June 30, 1908, was rescinded and the property reclaimed by appellee, were questions of fact to be determined by the jury from all the evidence. Gibson v. Chicago Packing & Provision Co., 108 Ill. App. 100, 105; Windmuller v. Fleming, 129 Ill. App. 476, 489. And the jury by their verdict decided those questions in favor of appellee.

Counsel for appellant also contends that the verdict is not supported by the evidence, that the trial court erred in modifying certain instructions offered by appellant and giving them to the jury as modified, and that the court also erred in refusing to admit certain evidence offered by appellant as to the value of the mortgaged property on June 30, 1908. We deem it unnecessary here to discuss at length these several points. Suffice it to say that upon examination we find them to be without merit. The judgment of the Circuit Court of Cook county is affirmed.

*Affirmed.*